Douglas F. Foley, WSBA #13119
E-mail: doug.foley@dougfoleylaw.com
FOLEY SAMPSON & NICHOLES, PLLC
13115 N.E. 4th Street, Suite 260
Vancouver, Washington 98684
Telephone: 360.883.0636
Facsimile: 360.944.6808
*Attorneys for Plaintiff Allstate Property and*
*Casualty Insurance Company and Allstate*
*Indemnity Company*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY and ALLSTATE INDEMNITY COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN HIE, DON SLY, a married man and his marital community, PHILIP DOVINH and JANE DOE DOVINH, and the marital community thereof, GEORGE BLAIR, and FOSS MARITIME COMPANY, LLC, <br><br> Defendants. | Civil No.  2:21-cv-00641 <br><br> COMPLAINT FOR DECLARATORY JUDGMENT |

Plaintiffs Allstate Property and Casualty Insurance Company and Allstate Indemnity Company by and through their attorneys, Douglas F. Foley of Foley Sampson and Nichols PLLC, allege as follows:

## I.     PARTIES AND JURISDICTION

1.     This action for Declaratory Judgment is one in which the United States District

Page 1 –  COMPLAINT FOR DECLARATORY JUDGMENT

Court is given original jurisdiction by reason of diversity of citizenship and the requisite amount in controversy exceeds $75,000 pursuant to Title 28, U.S.C. §1332.

2.    Allstate Property and Casualty Insurance Company and Allstate Indemnity Company ("Allstate") are Illinois corporations authorized to transact the business of insurance in the State of Washington, whose principal place of business is in the State of Illinois, and are deemed to be citizens of Illinois for diversity jurisdiction.

3.    Defendant John Hie is a single man who resides in King County and is a citizen of the State of Washington.

4.    Defendant Don Sly and his marital community is a resident of King County and a citizen of the State of Washington.

5.    Defendant Philip Dovinh and Jane Doe, and the marital community thereof, reside in King County are citizens of the State of Washington.

6.    Defendant George Blair is believed to reside in King County and is a citizen of the State of Washington.

7.    At all times pertinent to this lawsuit, Foss Maritime Company, LLC ("Foss") is a Washington Limited Liability Company and is deemed to be a citizen of Washington State.

8.    Allstate issued a Homeowners Policy and a Personal Umbrella Policy providing certain coverages subject to the terms, definitions, exclusions, limitations, and conditions contained in the insurance contracts to John Hie.

## II.    STATEMENT OF FACTS

9.    The underlying case involves a dispute between Don Sly and Philip Dovinh who are both marine chemists.  Sly and Dovinh had a prior working relationship and were parties to a settlement agreement with a non-disparagement clause. Claims in the underlying Amended Complaint are asserted by Don Sly for breach of contract, defamation, tortious interference with a business expectancy, civil conspiracy, and negligent supervision by Foss

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

Shipyard.

The following statement of facts is extracted from the Complaint filed by the Plaintiff in King County Superior Court in the underlying case.  The full and complete allegations of the complaint are included by reference.  Allstate does not necessarily agree to the veracity of the facts alleged, but recites the following facts for the sole purpose of identifying the issues in dispute in this matter with respect to the coverages provided by Allstate, subject to the terms, definitions, exclusions and conditions of the insurance contract.  The pertinent allegations of the Amended Complaint are set forth below:

The *Amended Complaint* states, as follows:

Plaintiffs Don Sly and his marital community, by and through their counsel of record, Haas Law, P.S., for their Amended Complaint against defendants hereby allege and aver as follows:

## I. PARTIES, JURISDICTION, AND VENUE

Plaintiffs Don Sly and his marital community reside in King County, Washington. (Complaint ¶1.1) Defendant Philip Dovinh ("Dovinh") is a resident of King County, Washington. (Complaint ¶1.2) Defendant George Blair ("Blair") is believed to be a resident of Pierce County, Washington. (Complaint ¶1.3) Defendant John Hie ("Hie") is believed to be a resident of Pierce County, Washington. (Complaint ¶1.5 [sic]) Defendant Foss Maritime Company, LLC, ("Foss") is a limited liability company under the laws of the State of Washington with its principal place of business in Seattle, Washington. (Complaint ¶1.6 [sic]) The subject matter hereof and the Plaintiffs and Defendants being residents of the State of Washington and transact business within this county and state, are subject to the jurisdiction of the above-entitled Court; and events material to Plaintiffs' claims herein occurred in King County, Washington and venue is proper. (Complaint ¶1.6 [sic])

## II. FACTUAL BACKGROUND

The Marine Chemist profession is highly specialized and dedicated to the control of hazards in the dangerous industry of ship repair. A certified Marine Chemist is a holder of a valid Certificate issued by the Board of the National Fire Protection Association (NFPA) and is qualified to determine whether entry and work within confined spaces on marine vessels, whether within or outside shipyards, may be undertaken safely in accordance with NFPA 306-2019, the industry's safety Standard for the Control of Gas Hazards on Vessels. For more than 45 years, Sly certified the safety (or lack thereof) of more than 60,000 repair sites and listed his findings on more than 20,000 marine chemist certificates without fire, explosion or injury. At all times relevant to this case, Sly was the most experienced marine chemist in the Western United States. (Complaint ¶2.1)

Starting in 1974, Sly's marine chemist services were regularly and frequently requested by repair supervisors at the Foss Shipyard in Seattle. (Complaint ¶2.2) Defendant

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

Philip Dovinh ("Dovinh") is a Marine Chemist and a former employee of Sound Testing. Dovinh worked for Sound Testing as a Marine Chemist from 1991 to 2013. In or around February 2013, Dovinh left Sound Testing after he did not receive a requested pay increase. During this period, Dovinh took customers from Sound Testing and started his own one-man Marine Chemist business in the Puget Sound area. Dovinh has been self-employed since leaving Sound Testing. (Complaint ¶2.3)

On or about March 1, 2013, the parties ended their working relationship and business arrangement. (Complaint ¶2.4) In or around September 2013, Sly and Dovinh and other related parties signed a CR2A Agreement ("2013 Agreement"). The 2013 Agreement had a non-disparagement clause. Dovinh expressly agreed to the non-disparagement provision. The 2013 Agreement does not restrict Dovinh from contacting Sly. There has never been any rule, code, standard, restriction or impediment to Dovinh contacting Sly to discuss any matter. (Complaint ¶2.5)

Sly has an excellent reputation for keeping workers safe in a dangerous industry. Sly is trusted for his knowledge and his commitment for keeping workers safe. It is well known that Sly has administered countless monthly training courses for shipyard competent people ("SCPs"), including training on the potential hazards during inert operations. Sly is known for exhibiting great care and concern for fellow shipyard friends and has a career-long cultivated skill and expertise of keeping people safe. (Complaint ¶2.6)

Sly's interactions and relationship with Foss management and personnel had been very positive for over forty (40) years. However, when Defendant John Hie ("Hie") became Shipyard Director, he had evident animus toward Sly. On one occasion, Hie ordered the Foss Seattle Shipyard steel shop and his superintendents to not seek the services of Sound Testing. In October 2017, Sly approached Hie about his handling of SCPs and made it clear to Hie that he believed SCPs must have absolute independence to do their OSHA responsibilities. Hie did not respond well to Sly approaching him with this critique. (Complaint ¶2.7)

On November 13, 2017, Sly performed inerting work on the Alaska Spirit in the Seattle Shipyard. While performing the work on November 13, 2017, Sly was assisted by the Chief Engineer for the Alaska Spirit Jimmy Justice, SCP Sheldon Murray, and fellow marine chemist Michael Schmitt. No one with personal knowledge had any complaints about Sly's work or any negative opinions about his work at any time. Mr. Justice was pleased with the work and confirmed that Sly did not endanger anyone. Mr. Murray, who is still a Foss SCP, confirmed that he did not see anything that he thought was wrong or troubling about Sly's work. Mr. Schmitt confirmed that he did not receive any complaints from Foss personnel about Sly's work performance during this time period. Mr. Schmitt further confirmed that any negative accusations about Sly's 11/13/17 are baseless. (Complaint ¶2.8) In or around the week of November 13, 2017, Dovinh was in the shipyard on several days including November 14th, November 16th, and November 18th. Dovinh conversed with multiple shipyard competent persons at Foss and discussed Sly's work. Dovinh knew these persons did not personally view Sly's work. Dovinh also knew that these persons had no involvement with any potential or actual investigations by Foss. (Complaint ¶2.9) Other than Dovinh, there were no other unaffiliated marine chemists performing work at the Foss Seattle Shipyard during the week of November 13, 2017. (Complaint ¶2.10) Sly's work on the Alaska Spirit was performed on a Monday (November 13, 2017).

From November 14 through 16 (Tuesday through Thursday), Sly did not receive any complaints or any negative feedback or comments about his work whatsoever. Furthermore, there were apparently no written communications or correspondence from any Foss

Page 4 –   COMPLAINT FOR DECLARATORY JUDGMENT

personnel between November 13, 2017 and November 16, 2017 related to Sly or any work performed by Sly. (Complaint ¶2.11) Unbeknownst to Sly at the time, during the week of Sly's work, Dovinh was conspiring with and communicating with another marine chemist, Defendant George Blair ("Blair"), and conspiring with and communicating with Hie and others. (Complaint ¶2.12) There was no reason or justification for Dovinh as a marine chemist with no personal knowledge of Sly's work to have contact with another marine chemist and a shipyard director about Sly's work. (Complaint ¶2.13)

On the evening of November 16, 2017, Hie called Dovinh at 6:39 p.m., and they spoke for 6 minutes. Immediately thereafter, Dovinh called Blair at 6:47 p.m. Blair called Dovinh back at 6:56 p.m., and they spoke for 20 minutes. (Complaint ¶2.14) The next day, on November 17, 2017, Dovinh called Blair at 7:29 a.m., and they had an 8-minute call. (Complaint ¶2.15) After speaking with Blair, on the morning of November 17, 2020, three (3) days after Sly's work, Blair sent Sly a text message. Blair is an unaffiliated Marine Chemist located in the Tacoma, WA and has his own one-man company. At the time, Blair was serving as Secretary and Pacific Northwest region representative of the Board of Directors of the Marine Chemist Insurance Fund and was Chairman of the Pacific Section of the Marine Chemist Association. (Complaint ¶2.16) In the November 17, 2017 text message, Blair stated that he "heard from shipyard personnel at Foss that there was an incident on a fishing boat involving inerting." (emphasis added). He went on the state that this text message was a "courtesy call to remind you this needs to be reported to the insurance Company and NFPA. As you know we are required to report any incident involving a marine chemist which could lead to litigation. [P]lease call or text me before I do anything." (Complaint ¶2.17)

This text message was shocking to Sly, because there was no incident on November 13, 2017. Sly performed good work on November 13, 2017 with no complaints. Sly did not inert the wrong tank, and he did not release any carbon dioxide into adjacent tanks. (Complaint ¶2.18) Sly immediately called Blair after receiving the 11/17/17 text message. Blair falsely stated to Sly that Foss personnel had told him that Sly endangered workers' lives by pumping carbon dioxide into tanks where people worked. (Complaint ¶2.19) Blair refused to provide the name of the Foss personnel that contacted him and refused to provide any other specifics. *Id.* (Complaint ¶2.20) Due to the severity of the claim and Blair's standing in the Marine Chemist industry, it was important that Sly immediately personally determine its basis. That same morning, Sly went to the Foss Seattle Shipyard to ask Foss personnel if they had any issues with the 11/13/17 work that was performed by Sly and Sound Testing. Sly had brief discussions with Foss Safety and Environmental/Health Manager Ron Sykes, Foss steel shop foreman Gene Downie, Shipyard Superintendent Kevin Smith, and Foss SCP Sheldon Murray. Through Sly's brief conversations with each of them, it became clear that no one directly involved with the Alaska Spirit job had made a complaint or knew details of the non-existent "incident" or "complaint." In fact, no one even knew George Blair. (Complaint ¶2.21)

On the afternoon of November 17, 2017, Sly contacted the proper Marine Chemist Insurance Fund representatives. As far as the NFPA was concerned, there had been no incident and no merit to the complaint. (Complaint ¶2.22) There was no marine chemist "incident" related to the 11/13/17 work onboard the Alaska Spirit. It was a difficult job that was done efficiently, timely, completely and at a reasonable cost with absolutely no risk to anyone. Both Sly and Sound Testing complied with all NFPA codes and standards including NFPA 306 protocols for tank inerting. Sly's inerting protocol precluded contamination by non-liquid vaporous carbon dioxide. Sly properly inerted the fuel tank with no carbon dioxide escaping into adjacent tanks, and there was no endangerment of personnel. (Complaint ¶2.23)

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

On November 20, 2017, Dovinh also sent text messages to SCP Henry Barrientos. (Complaint ¶2.24) On the same day, Dovinh also sent text messages to Hie on November 20, 2017 at 12:39 p.m. and at 2:14 p.m. (Complaint ¶2.25) In the evening on November 20, 2017, after communicating amongst themselves and without obtaining any information from persons with personal knowledge, Dovinh and Hie stated that Sly inerted the wrong tank and stated that Sly unintentionally leaked carbon dioxide to adjacent, or additional, tanks. Dovinh also stated that Sly appeared to have violated NFPA codes and standards. (Complaint ¶2.26) Without basis, Hie hid Dovinh's identity as the unaffiliated chemist that made the speculative and false statements about Sly's work. (Complaint ¶2.27) Hie knew that disclosing Dovinh's identity would mean disclosing that this "unaffiliated chemist" had no personal knowledge of Sly's work. (Complaint ¶2.28)

After the investigation began, Blair lied to Sly and purposely misled him as to the identity of the person that made the alleged report to Blair about Sly's work. There was no duty or responsibility for Blair to hide Dovinh's identity. Blair, working in concert with Dovinh, insisted for over two (2) years (November 2017 – February 2020) that he received the information about Sly's work directly from Foss personnel. (Complaint ¶2.29) There was no valid or legal justification for Blair conspiring with Dovinh and misleading and gaslighting Sly. (Complaint ¶2.30) Beginning on November 21, 2017, Sly sent several emails to Blair about his work. Blair forwarded these emails to Dovinh while continuing to conceal Dovinh's involvement and claiming that he received the November 17, 2017 report directly from Foss personnel. The forwarded emails disparage Sly. In one email on February 23, 2017, Blair is clearly sending Dovinh an disparaging email that he is proposing/planning to send to Sly. (Complaint ¶2.31) The false and clandestine report statements that were communicated by Blair, Dovinh, and Hie directly attacked Sly's reputation for providing excellent marine chemist work and keeping workers safe. Sly knew that the false report and allegations did not come from anyone that personally viewed his work. Therefore, Sly devoted himself to appealing to various people in positions of authority. Sly's professional and personal identity was and is very much linked to his reputation as a competent and experienced marine chemist that does not risk the safety of workers. (Complaint ¶2.32)

For a 1 and ½ year period, Sly was admittedly relentless with seeking information from Foss and seeking confirmation from Foss as to the origin of the false statements and reports about his work. There was no duty or reasonable justification for Dovinh, Blair and Hie to withhold information about the origin of the speculative and false report. Sly was called "insane" and the subject of numerous condemnations and insults for his refusal to accept the false factual narrative that Dovinh perpetuated. (Complaint ¶2.33) Not long after Sly's work, Dovinh contacted the Safety/Environmental/WC Supervisor for Lake Union Drydock Company ("LUDD"), Will Yates. LUDD is a shipyard that had a long standing relationship with Sly. Dovinh told Mr. Yates that Sly made a bad call on the Alaska Spirit and put peoples lives in danger. Mr. Yates did not solicit the information that Dovinh provided to him. Mr. Yates took Dovinh's statements seriously, because Dovinh is a marine chemist and Mr. Yates thought that Dovinh must have spoken to someone with that personally witnessed Sly's Alaska Spirit work. (Complaint ¶2.34)

After Dovinh published the false report about Sly's work and made the false allegations that Sly violated NFPA codes and standards, Hie restricted Foss personnel from scheduling Sly, excluded Sly from the Shipyard for a 10-week period and demanded that no Foss employee talk with Sly. (Complaint ¶2.35) In multiple emails in 2018 and 2019, Dovinh made defamatory and disparaging statements about Sly. (Complaint ¶2.36) On May 20, 2018, Dovinh sent an email accusing Sly of making false accusations against him and inferring that

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

my behavior was insane and that he was suffering from delusions or some mental health problems. (Complaint ¶2.37) On July 28, 2018, Dovinh sent an email to Blair asking Blair to relay a "question" about Sly that falsely claimed that Sly disparaged, blamed and falsely accused Mr. Dovinh. (Complaint ¶2.38) On July 5, 2019, Dovinh sent an email to other Marine Chemists saying that Sly was "FULL [O]F SHIT" and making false allegations against Sly. (Complaint ¶2.39)

On July 18, 2019, Dovinh received an email from a representative of the United States Coast Guard. The email pertained to Sly's marine chemist certification status and stated within the body of the email: ". . . Effective immediately, Mr. Don Sly (Marine Chemist Certificate 598) is no longer authorized to act in any capacity as a Marine Chemist . . ." When Dovinh received the email, he forwarded it to the local shipyard professional group, the Puget Sound Shipbuilders Association (PSSA). Rather than simply forwarding the original email, Dovinh changed the subject line from "Marine Chemist Don Sly" to ". . . Effective immediately, Mr. Don Sly (Marine Chemist Certificate 598) is no longer authorized to act in any capacity as a Marine Chemist . . ." (Complaint ¶2.40)

After Dovinh's false and disparaging report and statements and after Blair and Hie's related actions, Sly received negative treatment from many persons. During these interactions, Sly was subjected to accusations as to his lack of safety and questioned about his fitness to perform marine chemist work. When making his false and disparaging statements, Dovinh strategically contacted the specific persons and entities that could cause the maximum harm and damage to Sly. He contacted Marine Chemist George Blair who was a member/officer of the insurance fund. He also contacted the main two (2) customers/contractors of Sly's marine chemist services, Sound Testing's services, and Dovinh's services, which are Foss and LUDD. (Complaint ¶2.41) The Marine Chemist is a unique profession. Marine Chemists operate in an atmosphere of pervasive and necessary trust. This is because workers' lives in a dangerous manufacturing industry are at stake in every decision marine chemists make. If marine chemists lose the ubiquitous trust they engender from experience and training, they are vulnerable to competition from anyone, whether or not they have paid the price demanded by the profession. Marine Chemists are in very valuable fashion "written into the law" by OSHA, NFPA and NAVY statute we are required for industry certifications and training of workers. Marine Chemist clientele is very limited and specific, and well-known to each other within a very limited customer base. (Complaint ¶2.42) As such, when a fellow marine chemist and a major customer are advised by another marine chemist in a defamatory and disparaging fashion that Sly had committed wrongdoings and put people's lives in danger, it is incredibly damaging. The false allegations struck with surgical precision at the very essence of the Profession: The public certification of safe conditions in the workplace. Sly spent more than 35 years building an excellent reputation as a marine chemist and a making workplace safety a top priority. (Complaint ¶2.43)

Defendants' actions seriously and permanently injured Sly's reputation as a marine chemist. After Dovinh started the false and disparaging statements in November 2017 and after Blair and Hie conspired with Dovinh, Sly received a smaller number of requests from supervisors from Foss Shipyard for both Marine Chemist Certifications and for training programs compared to the identical timespans of 2017 and 2018. He also lost customers and over two (2) months of income from Foss for his services. (Complaint ¶2.44) Hie's conduct appears to have involved a personal objective and was not performed in furtherance of Foss's business. (Complaint ¶2.45) Foss failed to supervise Hie and exercise ordinary care. (Complaint ¶2.46) Foss should have known that Hie did not speak with anyone with personal knowledge about Sly's work. (Complaint ¶2.47)

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

# III. CLAIMS

### First Cause of Action: Breach of Contract as to Defendant Dovinh

Plaintiffs re-allege the preceding paragraphs of the Complaint as if fully set forth herein. (Complaint ¶3.1) Sly and Dovinh were parties to an agreement with a non-disparagement clause. (Complaint ¶3.2) Dovinh's actions breached the parties' contract. (Complaint ¶3.3) Dovinh's breach of the contract caused damages to Plaintiff. (Complaint ¶3.4)

### Second Cause of Action: Defamation/Defamation Per Se as to Defendant Dovinh

Plaintiffs re-allege the preceding paragraphs of the Complaint as if fully set forth herein. (Complaint ¶3.5) Dovinh made false and defamatory statements, including statements about Sly's November 13, 2017 work. (Complaint ¶3.6) No privilege, or qualified privilege, existed or exists for Dovinh to make the aforementioned false and defamatory statements. (Complaint ¶3.7) Dovinh acted with negligence or malice when making the false and defamatory statements. (Complaint ¶3.8) Dovinh's false and defamatory statements hurt Sly's ability to work in his field. (Complaint ¶3.9) Plaintiff's reputation has been damaged and such damage is irreparable. (Complaint ¶3.10)

### Third Cause of Action: Tortious Interference with Business Expectancy as to Defendants Dovinh, Blair, and Hie

Plaintiffs re-allege the preceding paragraphs of the Complaint as if fully set forth herein. (Complaint ¶3.11) Sly had a business expectancy and good business relationship with Foss. (Complaint ¶3.12) Defendants knew of Sly's valid business expectancy and good relationship with Foss. (Complaint ¶3.13) The Defendants intentionally interfered with this expectancy which induced or caused a breach of the expectancy or relationship. (Complaint ¶3.14) Sly was damaged by Defendants' actions. (Complaint ¶3.15) Defendants' actions had an improper purpose and used improper means. (Complaint ¶3.16)

### Fourth Cause of Action: Civil Conspiracy as to Defendants Dovinh, Blair, and Hie

Plaintiffs re-allege the preceding paragraphs as if fully set forth herein. (Complaint ¶3.17) Defendants agreed, by words and conduct, to accomplish an unlawful goal through lawful means and/to accomplish a lawful goal through unlawful means. (Complaint ¶3.18) Defendants unlawfully hid Dovinh's identity without any legal basis and knowingly published false information about Sly or, at a minimum, transformed conjecture and speculation about Sly into a false factual narrative. (Complaint ¶3.19) Defendants performed these actions to destroy Sly's reputation and livelihood and relationship with Foss. (Complaint ¶3.20) Sly has suffered damages and losses as a consequence. (Complaint ¶3.21) The damages and losses were caused by the acts of Defendants. (Complaint ¶3.22)

### Fifth Cause of Action: Negligent Supervision as to Foss

Plaintiffs re-allege the preceding paragraphs as if fully set forth herein. (Complaint ¶3.23) Foss failed to exercise ordinary care in supervising its employee, Hie. (Complaint ¶3.24) Foss knew or had reason to know that Hie presented a risk of danger to others. (Complaint ¶3.25) Foss had a duty to prevent Hie from taking the actions he took against Sly.

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

(Complaint ¶3.26) Sly was damaged by Foss's actions. (Complaint ¶3.27)

## IV. REQUESTED RELIEF

Wherefore, Plaintiffs' pray for the following relief:

A.    Judgment against Defendants in an amount to be proven at or before the time of trial;

B.    Judgment for Plaintiffs' attorney's fees and costs, including reasonable attorney's fees, as allowed by statute including but not limited to RCW 19.86 and RCW 59.18;

C.    Judgment authorizing Plaintiffs to amend this complaint to add additional parties and/or additional claims depending on new facts discovered; and

D.    Such other and further relief as the Court deems just and equitable.

## III.    INSURANCE POLICY PROVISIONS

10.    The Allstate Policies issued to John Hie are attached as Exhibit 2 and Exhibit 3.  The policies issued by Allstate provide the following pertinent coverages, terms, definitions, and exclusions.

The APC416-1 Homeowners Policy issued by Allstate Property and Casualty Insurance Company, provides the following pertinent coverages, terms, definitions, and exclusions as follows:

> "**Definitions Used In This Policy**
> Throughout this policy, when the following words appear in bold type, they are defined as follows:
> 1.    **Bodily injury** means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
>     a)    any venereal disease;
>     b)    Herpes;
>     c)    Acquired Immune Deficiency Syndrome (AIDS);
>     d)    AIDS Related Complex (ARC);
>     e)    Human Immunodeficiency Virus (HIV);
>
> or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.
>
> In addition, **bodily injury** does not include any symptom, effect, condition, disease or illness resulting in any manner from:
>     a)    lead in any form;

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

b)      asbestos in any form;
c)      radon in any form; or
d)      oil, fuel oil, kerosene, liquid propane or gasoline
intended for, or from, a storage tank located at the **residence premises**.

* * *

3.      **Business** means:
a)      any full-or part-time activity of any kind engaged
in for monetary or other compensation or the use of any part of
any premises for such purposes.  The providing of home day
care services to other than an **insured person** or relative of an
**insured person** for monetary or other compensation is also a
**business**.

However, the mutual exchange of home day care services is not
considered a business;

b)      the rental or holding for rental of property by an
**insured person**.  Rental of **your residence premises** is not
considered a **business** when:
1)      it is rented occasionally for residential
purposes;
2)      a portion is rented to roomers or boarders,
provided not more than two roomers or boarders reside on the
**residence premises** at any one time; or
3)      a portion is rented as a private garage.

* * *

6.      **Insured person(s)** –means **you** and, if a resident of **your**
household:
a)      any relative; and
b)      any person under the age of 21 in **your** care.

7.      **Insured premises** means:
a)      the **residence premises**; and
b)      under **Section II** only:
1)      the part of any other premises, other
structures and grounds used by **you** as a residence. This includes
premises, structures and grounds **you** acquire for **your** use as a
private residence while this policy is in effect;
2)      any part of a premises not owned by an
**insured person** but where an **insured person** is temporarily
living;
3)      cemetery plots or burial vaults owned by
an **insured person**;
4)      land owned by or rented to an **insured
person** where a single family dwelling is being built as that
person's residence;
5)      any premises used by an **insured person**

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

in connection with the **residence premises**;

        6)    any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

8.    **Occurrence** – means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

9.    **Property damage** – means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

\* \* \*

12.    **Residence premises** means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

13. **We**, **us** or **our** means the company named on the Policy Declarations.

14. **You** or **your** means the person listed under Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse.

\* \* \*

***Insuring Agreement***
In reliance on the information **you** have given **us**, **we** agree to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period.  The Policy Period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

This policy imposes joint obligations on the Named Insured(s) listed on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**. This policy imposes joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

**COVERAGE X**
**FAMILY LIABILITY PROTECTION**

**Losses We Cover Under Coverage X:**
Subject to the terms, conditions and limitation of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

\* \* \*

*Losses We Do Not Cover Under Coverage X and Coverage Y*

A.     *Losses We Do Not Cover Under Coverage X:*

1.     **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

\* \* \*

4.     **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

\* \* \*

C.     **Losses We Do Not Cover Under Coverage X and Coverage Y:**
Coverage under **Coverage X – Family Liability Protection** will be excluded for **bodily injury** and **property damage** and coverage under **Coverage Y – Guest Medical Protection** will be excluded for bodily injury as follows:

1.     **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:

        a)     such **insured person** lacks the mental capacity to govern his or her conduct;
        b)     such **bodily injury** or **property damage** is of a

**Foley Sampson & Nicholes, PLLC**
13115 NE 4ᵗʰ Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

different kind or degree than intended or reasonably expected; or

c)        such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

\* \* \*

9.        **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

10.        **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**. We do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

\* \* \*

### Section II Conditions

\* \* \*

4.        **Our Limits Of Liability**
Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under the **Family Liability Protection–Coverage X** for damages resulting from one **occurrence** will not exceed the limit shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**. **Our** total liability under **Coverage Y – Guest Medical Protection** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" Limit Of Liability shown on the Policy Declarations."

The Allstate Indemnity Company Personal Umbrella Policy Form AS410 provides, in

pertinent part:

### "General Provisions

### Definitions Used In This Policy
1.        **Bodily injury** means:
a)        physical harm to the body, including sickness, disease, disability or death resulting from physical harm to the body;

**Foley Sampson & Nicholes, PLLC**
13115 NE 4ᵗʰ Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

b)      shock, mental anguish or mental injury.

**Bodily injury** does not include:
a)      any harm resulting from:
        i)      false arrest; false imprisonment; wrongful detention;
        ii)     wrongful entry; invasion of rights of occupancy; or
        iii)    libel; slander; humiliation; defamation of character; invasion of rights of privacy.
b)      any symptom, effect, condition, disease or illness resulting in any manner from:
        i)      lead in any form;
        ii)     asbestos in any form;
        iii)    radon in any form; or
        iv)     oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at any residence premises owned by an **insured person**.
c)      i)      any venereal disease;
        ii)     Herpes;
        iii)    Acquired Immune Deficiency Syndrome (AIDS);
        iv)     AIDS related complex (ARC); or
        v)      Human Immunodeficiency Virus (HIV);

        or any related or resulting symptom, effect, condition, disease or illness related to c) i) through v) above.

2.      **Business** means:
        a)      any full or part time activity of any kind:
                1)      arising out of or relating to an occupation, trade or profession of an **insured person**; and
                2)      engaged in by an **insured person** for economic gain, including the use of any part of any premises for such purposes.  The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is a **business**.
        b)      the rental or holding for rental of any property by an **insured person**.

**Business** does not include:
        a)      volunteer civic service which an **insured person** performs without pay for a **business** which was formed and functions as a not for profit organization and which is not a function of the **insured person's** occupation, profession or trade.

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

b)      the occasional rental or holding for rental of **your** primary residence premises for residential purposes;

c)      the rental or holding for rental of a portion of **your** primary residence premises to not more than two roomers or boarders;

d)      the occasional or part time **business** activities of an **insured person** who is under 21 years of age;

e)      an **insured person's** occupancy of an office, private school or studio located on the primary residence premises; or

f)      the mutual exchange of home day care services.

3.      **Business** property means any property on which a **business** is conducted.

4.      **Insured person** means:

a)      **you**, and any other person who is named on the Policy Declarations;

b)      any person related to **you** by blood, marriage or adoption who is a resident of **your** household; or

c)      any dependent person in **your** care, if that person is a resident of **your** household.

However, persons defined in 4 b) who are over the age of 25 are not **insured person**s for any **occurrence** arising out of the ownership, maintenance or use of any motor vehicle owned by them.

5.      **Occurrence** means an accident during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury**, **personal injury** or **property damage**.

6.      **Personal injury** means harm resulting from:

a)      false arrest; false imprisonment; wrongful detention;

b)      wrongful entry; invasion of rights of occupancy;

c)      libel; slander; humiliation; defamation of character; invasion of rights of privacy.

Fines and penalties imposed by law are not included.

7.      **Property damage** means physical harm to or destruction

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

of tangible property, including loss of its use resulting from such physical harm or destruction.

8.      **Retained limit** means the amount of damages an **insured person** must assume and pay for any **occurrence** if:

        a)      no underlying insurance is required; and

        b)      no other insurance applies to the **occurrence**.

9.      **We**, **us** or **our** means the company named on the Policy Declarations.

10.     **You** or **your** means the policyholder named on the Policy Declarations and:

        a)      that person's resident spouse; or

        b)      if a resident of the same household, a party who has entered into a domestic partnership or civil union, as recognized by the state in which this policy was issued, with the policyholder named on the Policy Declarations.

\* \* \*

**Insuring Agreement**

In reliance on the information **you** have given **us**, **we** agree to provide the coverages indicated on the Policy Declarations.  In return, **you** must pay the premium when due and comply with all policy terms and conditions.  This includes maintaining all Required Underlying Insurance.

The terms of this policy impose joint obligations on persons defined as **insured persons.**  This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

This policy provides only excess insurance.  It does not contribute with any Required Underlying Insurance or other insurance which applies to an **occurrence**.  It also is excess to any retained limit an **insured person** assumes.

**When And Where The Policy Applies**

This policy applies to an **occurrence** anywhere in the world that takes place during the policy period.  The Policy Declarations show the policy period. This policy is not complete without the Policy Declarations.

**Foley Sampson & Nicholes, PLLC**
13115 NE 4ᵗʰ Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

\* \* \*

**Required Underlying Insurance**
**You** must maintain the Required Underlying Insurance policy.
**You** must maintain the Required Underlying Insurance at or above the limits as shown on the Policy Declarations "Required Underlying Limit" at all times for each liability exposure any **insured person** has.  If **you** fail to maintain the Required Underlying Insurance policy applicable to the **occurrence**, there will be no coverage for any **insured person** under this policy until the damages exceed the Required Underlying Insurance limit for that exposure.  If the underlying insurance applicable to the **occurrence** does not provide at least the limits required under this section of this policy, **you** will be responsible for the damages up to the Required Underlying Insurance amounts.

If **you** maintain limits equal to or greater than the Required Underlying Insurance limits, this policy will apply as excess above the actual limits **you** maintain.  If any of **your** underlying coverage limits are used up, reduced, or canceled:
1.      **you** must try to replace the coverage; and
2.      **you** must notify us immediately.

\* \* \*

*Excess Liability Insurance − Bodily Injury and Property Damage*
*Coverage XL*

*Section 1*
Under Section 1 of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising out of an **occurrence** that is both a loss **we** cover under **Excess Liability Insurance Bodily Injury and Property Damage Section 1** of this policy and a covered loss under **your** Required Underlying Insurance policy.

**We** will not pay any punitive or exemplary damages, fines and penalties.

This section does not apply to any **occurrence** that is covered under **Excess Liability Insurance − Personal Injury**.

**Foley Sampson & Nicholes, PLLC**
13115 NE 4ᵗʰ Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

***Losses We Cover Under Excess Liability Insurance - Bodily Injury and Property Damage – Section 1***
**We** will cover an **occurrence** arising only out of:
1.      Personal activities of an **insured person**.

2.      A volunteer civic service which an **insured person** performs without pay, for a not for profit corporation and which is not a function of that person's **business**.

Payment or reimbursement for reasonable expenses actually incurred by the **insured person** in connection with the volunteer civic service is not considered pay.

3.      The duties of **your** domestic employees who are not subject to Workers Compensation Laws.

***Amounts We Pay- Section 1***
**We** will pay only that amount of damages which exceeds the sum of:
1.      the limits specified in this policy for the Required Underlying Insurance under which the **occurrence** is a covered loss; plus
2.      the limits of any and all other liability insurance available to an **insured person** which apply to the **occurrence**.

However, in no event shall **we** pay any amount above **our** limit of liability.  **We** will not pay the difference between the limits specified in this policy as Required Underlying Insurance and any lower limits actually in effect.

***Section 2***
Under Section 2 of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising only out of:
1.      a covered **occurrence** for which Required Underlying Insurance is not required by this policy; or

2.      a covered **occurrence** for which **you** are required by this policy to maintain Required Underlying Insurance but there is no Required Underlying Insurance in effect at the time of the **occurrence** .

**We** will not pay any punitive or exemplary damages, fines and penalties.

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

*Losses We Cover Under Excess Liability Insurance − Bodily Injury and Property damage − Section 2*
**We** will cover an **occurrence** arising only out of:
1.     Personal activities of an **insured person**.

2.     A volunteer civic service which an **insured person** performs without pay, for a not for profit corporation and which is not a function of that person's **business**.

      Payment or reimbursement for reasonable expenses actually incurred by the **insured person** in connection with the volunteer civic service is not considered pay.

3.     The duties of **your** employees who are not subject to Workers Compensation Laws.

*Amounts We Pay − Section 2*
**We** will pay only that amount of damages which exceeds the sum of:
1.     the limits specified in this policy's Policy Declarations for Required Underlying Insurance required by this policy for the **occurrence** even though such Required Underlying Insurance was not in effect at the time of the **occurrence**; plus

2.     the limits of any and all other liability insurance available to an **insured person** which apply to the **occurrence**.

However, if no other insurance is required or no other insurance applies to the **occurrence**, **we** will pay only those amounts which exceed the retained limit, up to the applicable limit of liability shown on the Policy Declarations.

In no event shall **we** pay any amount above **our** limit of liability.

*Exclusions- Losses We Do Not Cover Under Excess Liability Insurance − Bodily Injury and Property damage − Section 2*
**Excess Liability Insurance − Bodily Injury and Property Damage − Section 2** will not apply:
1.     To any **occurrence** covered under **Excess Liability Insurance − Bodily Injury and Property damage − Section 1** or under **Excess Liability Insurance − Personal injury**.

1.     To any **occurrence** covered under **Excess Liability**

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

**Insurance Bodily Injury and Property Damage Section 1** or under **Excess Liability Insurance Personal Injury**.

2.       To any **occurrence** arising out of any act or failure to act by any person in performing functions of that person's **business**.

3.       To any **occurrence** arising out of a **business** or **business** property.

\* \* \*

13.       To **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**.  This includes any bodily injury or **property damage** arising out of a violation of a penal law or ordinance committed by or with the consent or knowledge of an **insured person**.  This exclusion applies even if:
          a)       such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or
          b)       such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

\* \* \*

### *Section 3 – Common Provisions*

### *Limit Of Liability*
**Our** total liability under **Excess Liability Insurance – Bodily Injury and Property Damage** for damages arising out of one **occurrence** will not exceed the " each occurrence" limit shown on the Policy Declarations, regardless of the number of:
1.       **insured person**s;
2.       claims;
3.       claimants;
4.       injured persons; or
5.       policies involved.

The "Annual Aggregate Limit"  for **Excess Liability Insurance – Bodily Injury and Property damage** shown on the Policy Declarations is the most **we** will pay for all damages resulting from all **occurrences** that occur during the policy period regardless of when the amounts were paid.

**Foley Sampson & Nicholes, PLLC**
13115 NE 4ᵗʰ Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

There will be no duplication of payments made under **Excess Liability Insurance – Bodily Injury and Property damage Section 1** and **Excess Liability Insurance – Bodily Injury and Property damage Section 2** of this policy.

### When We Pay

**We** will not begin to make payment for any damages resulting from an **occurrence** covered by this policy until **our** liability has been determined by:

1.      agreement between the claimant and us; or
2.      a final judgment against an **insured person**.

Claim for payment must be made within 12 months after determination of **our** liability.  If additional claims are filed due to the same **occurrence**, payment will be made within 30 days after the **insured person** gives us proper proof.

### Defense We Will Provide

**We** will defend an **insured person** sued as the result of an **occurrence** covered by this policy.  **We** will not defend any **insured person** against any claim for punitive or exemplary damages.

When defense is provided by the insurer providing the Required Underlying Insurance or any other liability insurance, **we** maintain the right to join in the defense of any claim or suit which may require us to pay.

If the **insured person** fails to maintain the Required Underlying Insurance, **we** will not defend any **insured person** for any amount of damages falling within the Required Underlying Insurance limits.

**We** may be prevented from defending an **insured person**, in any country, due to laws or for other reasons.  In that event, **we** will pay any expense incurred, with **our** written consent, for the **insured person's** defense.

**We** may investigate and settle any claim or suit as **we** consider appropriate.

### Additional Payments We Will Make

In defending an **insured person**, **we** will pay the following

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

regardless of **our** limits of liability:

1.      Premiums on appeal bonds and on bonds to release attachments.  **We** have no obligation to apply for or furnish these bonds.

2.      Court costs for defense.

3.      Interest accruing on damages awarded.  **We** will pay this interest only until **we** have paid, tendered or deposited in court the amount of damages for which **we** are liable under this policy.  **We** will only pay interest on the amount of damages for which **we** are liable under this policy, not exceeding **our** limits of liability.

**We** will repay an **insured person** for all reasonable expenses incurred at **our** request, arising from an **occurrence we** cover. This includes payment for actual loss of wages.  **We** are not obligated to repay any expenses incurred by an **insured person** if the **insured person** takes any action or makes any payments other than for covered expenses.  **Our** payment for lost wages will not exceed:

1.      $150 per day; nor

2.      A total of $5000 per **insured person**.

**_Retained Limit_**
**Retained limits** vary by state.  The **retained limit** that applies to this policy is determined by the state shown in the address in the Policy Declarations and the dollar amount shown below for that state.

\* \* \*

**_Excess Liability Insurance − Personal Injury Coverage XP_**

Under **Excess Liability Insurance Personal Injury**, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **personal injury**. **Personal injury** must arise from a covered **occurrence**.

**We** will not pay any punitive or exemplary damages, fines and penalties.

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

***Losses We Cover Under Excess Liability
Insurance Personal Injury***
**We** will cover an **occurrence** arising only out of:
1.       Personal activities of an **insured person**.

2.       A volunteer civic service which an **insured person**
performs without pay, for a not-for profit corporation and which
is not a function of that person's **business**.

Payment or reimbursement for reasonable expenses actually
incurred by an **insured person** in connection with the volunteer
civic service is not considered pay.

***Exclusions- Losses We Do Not Cover Under
Excess Liability Insurance – Personal injury***
This coverage does not apply:

1.       To **personal injury** arising out of any act or failure to act
by any person in performing functions of that person's **business**.

2.       To **personal injury** arising out of a **business** or **business
property**.

* * *

7.       To **personal injury** arising from any contract or
agreement, whether written or oral.

8.       To libel, slander or defamation of character if the first
injurious publication or utterance of the same or similar material
was made by an **insured person** prior to the effective date of
this policy.

9. To **personal injury** arising from illegal discrimination.

10.       To **personal injury** that results in a claim where an
**insured person** has concealed or misrepresented any material
fact or circumstance if such misrepresentation or concealment of
material fact or circumstance was made with the intent to
deceive.

11.       To **personal injury** arising out of oral, written, or
electronic publication of material, if done by, or at the direction
of, an **insured person** with knowledge that the material is false.

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

12.     To **personal injury** intended by, or which may reasonably be expected to result from the intentional acts or omissions of, any **insured person**.  This exclusion applies even if:

        a)     such **personal injury** is of a different kind or degree than that intended or reasonably expected; or

        b)     such **personal injury** is sustained by a different person than intended or reasonably expected.

13.     To **personal injury** arising out of, or which may reasonably be expected to result from, the criminal acts of any **insured person**.  This includes any **personal injury** arising out of a violation of a penal law or ordinance committed by or with the consent or knowledge of an **insured person**.  This exclusion applies even if:

        a)     such **personal injury** is of a different kind or degree than that intended or reasonably expected; or

        b)     such **personal injury** is sustained by a different person than intended or reasonably expected.

\* \* \*

### *Limit Of Liability*

**Our** total liability under **Excess Liability Insurance – Personal injury** for damages arising out of one **occurrence** will not exceed the "each occurrence" limit shown on the Policy Declarations, regardless of the number of:

1.     **insured person**s;
2.     claims;
3.     claimants;
4.     injured persons; or
5.     policies involved.

The "Annual Aggregate Limit" for **Excess Liability Insurance – Personal injury** shown on the Policy Declarations is the most **we** will pay for all damages resulting from all **occurrences** that occur during the policy period regardless of when the amounts were paid.

### *Amounts We Pay*

**We** will pay only that amount of damages which exceeds the sum of:

1.     the limits of liability of the underlying insurance which

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

apply to the **occurrence**; plus

2.      the limits of any and all other liability insurance available to an **insured person** which apply to the **occurrence**.

If no other insurance is required or no other insurance applies to the **occurrence**, **we** will pay only those amounts which exceed the retained limit, up to the applicable limit of liability shown on the Policy Declarations for **Excess Liability Insurance − Personal injury** .

In no event shall **we** pay any amount above **our** limit of liability.

### When We Pay
**We** will not begin to make payment for any damages resulting from an **occurrence** covered by this policy until **our** liability has been determined by:

1.      agreement between the claimant and **us**; or

2.      a final judgment against an **insured person**. Claim for payment must be made within 12 months after determination of **our** liability.  If additional claims are filed due to the same **occurrence**, payment will be made within 30 days after the **insured person** gives us proper proof.

### Defense We Will Provide
**We** will defend an **insured person** sued as the result of an **occurrence** covered by this policy.  **We** will not defend any **insured person** against any claim for punitive or exemplary damages.

When defense is provided by the insurer providing any other liability insurance, **we** do maintain the right to join in the defense of any claim or suit which may require us to pay.

**We** may be prevented from defending an **insured person**, in any country, due to laws or for other reasons.  In that event, **we** will pay any expense incurred, with **our** written consent, for the **insured person's** defense.

**We** may investigate and settle any claim or suit as **we** consider appropriate."

* * *

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

## IV.   DECLARATORY JUDGMENT ACTION

11.     A justiciable controversy exists between the parties hereto.  This controversy
can be resolved by this Court through entry of its Judgment declaring the rights and liabilities
of the parties alleged herein under the contracts of insurance alleged above.

12.     Allstate has no duty to indemnify John Hie, for the following reasons:

12.1    There is no defined "occurrence" under the policies.

12.2    The claims do not assert defined "bodily injury", "property
damage" or "personal injury".

12.3    The intentional or criminal acts exclusion in the Allstate policies
excludes coverage for John Hie's conduct for the claims of Tortious
Interference with Business Expectancy and Civil Conspiracy.

12.4     The claims asserted arise out of the insured's excluded and
defined "business activities."  The Homeowners policy does not cover bodily
injury or property damage arising out of the past or present business activities
of an insured person.  The Personal Umbrella Policy excludes personal injury
coverage arising out of any act or failure to act by any person in performing
functions of that person's business, and to injury arising out of a business or
business property.

12.5    The Homeowners Policy does not cover bodily injury or
property damage arising out of the rendering of, or failure to render,
professional services by an insured person.

13.     The Court should enter a Judgment wholly in favor of Allstate declaring,
adjudicating, and decreeing that Allstate is not obligated to indemnify John Hie under the
insurance contracts for the claims asserted by Don Sly, and that Don Sly is owed nothing
under the insurance contracts.

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

WHEREFORE, Allstate prays for relief as follows:

1.      For Judgment declaring that Allstate is not required to indemnify Defendant John Hie under the insurance contracts for the claims assert by Don Sly, and that Don Sly is owned nothing under the insurance contracts.

2.      For Allstate's costs and such other and further relief as may be deemed just and equitable.

DATED this 14th day of May 2021.

FOLEY SAMPSON & NICHOLES, PLLC

BY /S/ DOUGLAS F. FOLEY _____
      Douglas F. Foley, WSBA 13119
      *Attorneys for Plaintiffs*

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636